UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIRAJ ABDLUAZIZ KUMEL,<br>Petitioner,<br>v.<br>JEREMY CASEY, Warden at Imperial Regional Detention Facility, et al.,<br>Respondents. | Case No.: 26cv1980-LL-JLB<br>**ORDER GRANTING MOTION TO ENFORCE COURT ORDER**<br>[ECF No. 13] |

Before the Court is Petitioner Siraj Abdluaziz Kumel's Motion to Enforce Court Order. ECF No. 13. Respondents filed a response opposing the Motion. ECF No. 15. Petitioner did not file a Reply. Also before the Court is the May 11, 2026 transcript of the individualized bond hearing pursuant to the Court's Order for Respondents to lodge it with the Court. ECF Nos. 17, 19, 20. For the reasons set forth below, the Court **GRANTS** the Motion.

## I. BACKGROUND

Petitioner is a citizen of Ethiopia who entered the United States on January 3, 2025 and has been detained since then, for almost twenty months. ECF No. 13. ¶¶ 1-4. Petitioner fled Ethiopia due to persecution based on his ethnicity. ECF No. 7 at 2; *see also* Decl. of Siraj Abdluaziz Kumel ¶ 1. He entered the United States to seek asylum on January 3,

2025. *Id.* He was immediately detained and has been in immigration detention ever since. *Id.* He had his first court hearing in mid-February 2025, and he filed his asylum application in mid-July 2025. *Id.* ¶¶ 4–5. Petitioner's final court hearing was scheduled for January 15, 2026. *Id.* ¶ 6. The day before, on January 14, 2026, the government "sent a letter to [him] and the judge asking for [him] to be removed to Uganda." *Id.* ¶ 7. His hearing was moved to January 30. *Id.* Several days before then, he was "sent a letter saying [he] was being removed to Uganda, so [he] never had [his] final asylum hearing on January 30." *Id.* ¶ 8. Petitioner appealed the IJ's removal order to Uganda to the Board of Immigration Appeals ("BIA"), which received his appeal on February 22, 2026. *Id.* at ¶ 8; *see also* ECF No. 7-2. His appeal remains pending. ECF No. 13 ¶ 2.

On March 27, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and a Motion to Appoint Counsel. ECF Nos. 1, 2. This Court granted Petitioner's Motion to Appoint Counsel and an Amended Petition was filed on April 13, 2026. ECF No. 7. On May 4, 2026, this Court granted Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and ordered Respondents to:

> [H]old an individualized bond hearing before a neutral immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if released. The immigration judge shall consider alternative conditions of release and Petitioner's ability to pay bond if he determines bond is appropriate.

ECF No. 11. On May 11, 2026, a bond hearing was held, but Petitioner alleges in the instant Motion to Enforce that the Immigration Judge ("IJ") denied bond in a proceeding that failed to comply with this Court's Order. ECF No. 13 ¶ 6. Petitioner timely appealed the bond denial on June 11, 2026, which is still pending. *Id.*

According to Petitioner, the "[bond] hearing did not satisfy this Court's order or due process because the Government did not establish by clear and convincing evidence that detention was necessary, and the Immigration Judge did not meaningfully address Petitioner's community ties, ability to pay, or less restrictive alternatives to detention." *Id.*

¶ 20. Specifically, Petitioner contends that the IJ failed to comply with requiring the Government to bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is warranted. *Id.* ¶ 22. Petitioner further argues that the IJ "relied on the pendency of Petitioner's appeal from the pretermission decision and the speculative nature of future relief when assessing flight risk, notwithstanding Ninth Circuit authority recognizing that a final removal order, standing alone, does not constitute clear and convincing evidence of flight risk." *Id.* ¶ 23 (citing *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011)). Petitioner argues:

> The Immigration Judge denied bond solely on the basis of an alleged risk of flight. The written Bond Order expressly states that bond was denied because of a "Risk of flight as stated on the record" and contains no finding that Petitioner poses a danger to the community. Nevertheless, DHS failed to present clear and convincing evidence demonstrating that Petitioner is likely to flee if released. DHS did not present evidence that Petitioner ever failed to appear for a court hearing, violated any condition previously imposed upon him, absconded from supervision, or otherwise attempted to evade immigration authorities. Nor did DHS present sufficient evidence justifying Petitioner's continued detention. *See Rodas Dieguez v. Noem*, No. 3:26-cv-00976-RBM-MMP (S.D. Cal. Feb. 27, 2026).
>
> The evidence before the Immigration Judge established that Petitioner has a fixed and verifiable residence where he will reside upon release. Petitioner presented evidence that he will live with his cousin, who has the financial means to provide housing and support. Petitioner additionally demonstrated that he has no criminal history, no history of violence, and no history of failing to appear for any immigration or court proceeding. These factors strongly support release and undermine any conclusion that Petitioner presents a flight risk. Accordingly, DHS failed to satisfy the clear and convincing evidence standard required by the Habeas Judgment.

ECF No. 13 ¶¶ 24-25. According to the Government, the Court should deny Petitioner's Motion to Enforce because the IJ complied with this Court's Order and Petitioner has not exhausted his administrative remedies. ECF No. 15 at 1.

/ / /

/ / /

## II. LEGAL STANDARD

A federal court has "inherent power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996); *Crawford v. Honig*, 37 F.3d 485, 488 (9th Cir. 1994), *as amended on denial of reh'g* (Jan. 6, 1995) ("[D]istrict courts have continuing jurisdiction to enforce their injunctions."). "The moving party has the burden of showing by clear and convincing evidence" that Respondents "violated a specific and definite order of the court." *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992), *as amended on denial of reh'g* (Aug. 25, 1992) (citation omitted). The burden then shifts to Respondents "to demonstrate why they were unable to comply." *Id.* (citation omitted).

## III. DISCUSSION

### A. Exhaustion

The Court finds exhaustion is not required for this Motion. The bond hearing at issue was conducted pursuant to an order from this Court, which stated that the Government would provide "an individualized bond hearing before a neutral immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if released." ECF No. 11. Petitioner argues that the Government failed to follow the Court's Order. ECF No. 13. The Court has authority to review compliance with its order granting habeas relief. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011); *Kumar v. Noem*, No. 1:26-CV-01148-DJC-AC, 2026 WL 983129, at *3 (E.D. Cal. Apr. 13, 2026) ("Respondents' failure to comply with the terms of that Order by applying the standard expressly included in the terms of the Order is an issue appropriately addressed by a motion to enforce the Court's order."). Even if exhaustion is required, the Court finds it appropriate to waive prudential exhaustion here, where Petitioner is challenging compliance with this Court's order regarding the standard of proof applied at a bond hearing and not his removability. *See Laing v. Ashcroft*, 370 F.3d 994, 1001 (9th Cir. 2004) ("This Circuit has also found waiver in cases where petitioners were challenging issues other than the BIA's ruling on removability." (citation omitted)); *Bayani v. LaRose*, No. 26-CV-0266-JES-VET, 2026

WL 1270059, at *5 (S.D. Cal. May 8, 2026) (excusing exhaustion "for purposes of reviewing compliance with the Court's prior order for a bond hearing").

**B. Merits**

The Court finds the bond hearing did not comply with its order granting habeas relief. The bond hearing began with the IJ acknowledging this Court's habeas order and stated that "the habeas order shifts the burden to the Government." ECF No. 20-1 at 2. Notably, the IJ did not state the "clear and convincing" standard on the record. The IJ stated that the Government submitted three exhibits, one was this Court's Order, one was an evidence packet that was approximately thirteen pages, and the third one was the legal brief. *Id.* at 3. Next, the IJ asked Government's counsel how he would like to proceed, and he responded that "the Department would respectfully submit on the evidence that has been filed in the record of the proceeding." *Id.* at 4. Counsel for Petitioner also stated that she had nothing new to provide on behalf of Petitioner. *Id.*

Then, the IJ asked Petitioner's counsel if she had a closing argument. *Id.* Petitioner's counsel stated that there are "multiple people here in the United States that wish to take of [Petitioner] and help him financially and know the importance, because [she had] spoken to at least three of them" regarding the importance of "follow[ing] any orders given by our Government, and appear at every ICE check-in, ISAP check-in, Court hearing, and are willing to do that." *Id.* at 4-5. Accordingly, Petitioner's counsel argued that there is no flight risk because Petitioner had "every reason to stay in this country to appear." *Id.* at 5.

The IJ then asked Government's counsel for his closing argument, and he stated that there are no "issues with respect to danger." *Id.* However, Government's counsel stated that regarding the risk of flight, "there wasn't any information, I don't believe, unless I've missed it…that there are any family ties in the United States that would be able to file a petition on the Respondent's behalf that would entitle him to reside here permanently." *Id.* Regarding the "multiple people here in the United States who [Petitioner's counsel stated] who are willing to come forward to take care of him, and as laudable as that sounds, I don't know that that in and of itself could eliminate any risk of flight, Your Honor." *Id.*

Government's counsel also reiterated that Petitioner had entered "unlawfully" and that he "[doesn't] believe there's any employment history in the United States." *Id*. at 6. Accordingly, Government's counsel argued that "there is a risk of flight." *Id.* The IJ did not ask any questions of Petitioner.

The IJ denied bond, finding that Petitioner was not a danger but was a flight risk. *Id.* at 6. The IJ reasoned as follows:

> In relation to risk of flight, reviewing the [*Guerra*] factors, the Respondent does have a fixed address to live at in the United States with his sponsor. He does not have any length of residence in the United States as he entered the country illegally, and has been in custody ever since. He does not have as he's been in custody -- he has no employment in the United States. He has, he is 34 years old. He's single. He has no children. He has no family in the United States beyond his cousin. His application for relief was preterminated. That issue is now on appeal. It is speculative at this point if he will win the bond appeal. Even if he wins the bond appeal, it will be remanded back down to an Immigration Judge to hold a new merit hearing. Which is still speculative if he is going to have any form of relief or be granted relief. He does have a sponsor who refers to himself as a financial sponsor. He is the cousin -- is the Respondent's cousin. He lives in Silver Springs, Maryland. The letter does not go into how well he knows the Respondent beyond being his cousin. This sponsor only makes $37,000 a year. Based upon the [*Guerr*a] factors and the fact that the Respondent's relief is speculative [], I find that the Respondent in this case is a risk of flight. And the [*Guerra*] factors weigh against the Respondent, and I'll be denying his bond as a risk of flight.

*Id.* at 6-7.

Although it was the Government's burden to prove by clear and convincing evidence that Petitioner would likely flee if released, the Government made no arguments during the hearing that Petitioner was a flight risk other than in the closing argument when he stated that Petitioner entered unlawfully, had no family who could apply for his permanent residency, and had no employment. Petitioner argues in the instant Motion to Enforce that "the Government did not establish by clear and convincing evidence that detention was necessary, and that the Immigration Judge did not adequately address the individualized facts showing that Petitioner can be safely released under reasonable conditions." ECF No.

13 ¶ 66. Respondents do not directly refute this argument but state that the bond hearing was compliant with the Court's Order. ECF No. 15 at 5. The Court agrees with Petitioner.

Generally, courts will "accept that the [IJ] 'applied the correct legal standard' if the [IJ] 'expressly cited and applied the relevant caselaw in rendering its decision'" unless "there is an indication that something is amiss." *Martinez*, 124 F.4th at 785 (quoting *Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009)). However, "the IJ's mere recitation of the applicable legal standard is not enough when the IJ's decision makes it clear . . . that the IJ did not actually apply the standard in his reasoning and decision." *Ramos-Portillo v. McAleenan*, No. EDCV180260MWFSS, 2019 WL 3246499, at *1 (C.D. Cal. July 19, 2019). "It is the application of the clear-and-convincing standard, not its recitation, that matters." *Id.*; *see also Nat. Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision.")

Here, the IJ acknowledged the burden was on the Government in the opening statement, but she never stated in the oral decision that the Government had met its burden of clear and convincing evidence. ECF No. 13 ¶ 66. The Government does not directly dispute this claim. *See generally* ECF No. 15. It merely states that "[h]ere, the immigration judge held the bond hearing in a timely fashion [] and applied the burden of proof required by this Court's order. . . . The immigration judge ultimately found Petitioner presented as a flight risk' as stated on the record' and denied bond to Petitioner." *Id.* at 5. However, a "mere recitation" of the legal standard is insufficient to show that the IJ actually applied the burden.

Second, Petitioner claims, and the Government does not dispute, that the IJ did not "adequately address the individualized facts showing that Petitioner can be safely released under reasonable conditions." ECF No. 13 ¶ 66. Upon the Court's review of the transcript of the bond hearing, the Government did not proffer any *evidence* of flight risk; their only *argument* was that Petitioner had no family here who could apply for his permanent

residency which was speculative to support Government counsel's argument that he "[didn't] know that in and of itself could eliminate any risk of flight." ECF No. 20-1 at 5. For the reasons set forth in more detail below, the Court finds that the IJ construed evidence (or the lack of evidence) against Petitioner even though the Government had presented no evidence to support the IJ's decision.

The IJ's speculations regarding Petitioner's application for relief that was on appeal and considerations on what would happen even if he wins the bond appeal are inherently speculative, which limit their probative value. *See Bayani*, 2026 WL 1270059, at *7 (observing "[a]n IJ's role at a bond hearing is to determine whether the government has met its burden to detain...not to concoct theories regarding [a petitioner's] motivations" and then concluding that the "IJ thus committed legal error by considering her own speculation, which weighs in favor of finding that she applied the wrong standard at the hearing.").

Regarding the IJ's reliance on the fact that Petitioner entered the United States unlawfully, courts have found that evidence "common to all detainees" fails to meet the clear and convincing standard without a more particularized finding. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) (reasoning the fact that the petitioner had been ordered removed is "a relevant factor," but that common factor does not alone "constitute clear and convincing evidence that [petitioner] presented a flight risk justifying denial of bond"), *abrogated on other grounds as recognized by Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022); *Tiboko-Tifuh v. Noem*, No. 26-CV-1215-JO-DEB, 2026 WL 1603795, at *2 (S.D. Cal. June 4, 2026) (reasoning that unlawful entry "is common among asylum seekers," and without "individualized evidence regarding the particular circumstances surrounding Petitioner's entry or other evidence of past noncompliance, it is insufficient to support a reasonable inference of Petitioner's tendency toward future nonappearance"); *Bayani*, No. 26-CV-0266-JES-VET, 2026 WL 1270059, at *7 (reasoning "the record of Petitioner's entrance into the country" lacked the needed probative value and specificity for risk of flight, and the IJ's reliance on this evidence

"weighs strongly in favor of finding that the IJ failed to apply the proper standard at the hearing"). Here, although Petitioner entered the United States without inspection, he entered to seek asylum and has been in immigration detention since then.

Additionally, Government counsel's arguments about the insufficiency of Petitioner's family sponsors, one of who is Petitioner's cousin, are likewise insufficient to carry the burden to prove risk of flight by clear and convincing evidence. In sum, the Court finds the IJ failed to follow this Court's Habeas Order. The IJ's analysis of flight risk is insufficient to satisfy the clear and convincing standard required of the Government. Because the Court finds the immigration judge failed to follow its order by not applying the requisite burden of proof on the Government, the Court **GRANTS** the Motion to Enforce Judgment. ECF No. 20.

**C. Remedy**

"Habeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). "Federal courts have a fair amount of flexibility in fashioning specific habeas relief." *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Indeed, federal courts have broad discretion to remedy unlawful detention "as law and justice require." 28 U.S.C. § 2243; *Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("[H]abeas corpus, is at is core, an equitable remedy"). "Moreover, . . . equitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973).

Petitioner was denied the relief the Court ordered after granting his amended habeas petition when the IJ did not hold the Government to the clear and convincing standard that Petitioner was a flight risk. Petitioner is subject to unlawfully prolonged detention and the IJ found that he is not a danger. Because the Government did not comply with the habeas order, the Court finds immediate release is appropriate based on the facts of this case. *See Sakwe v. Mullin*, No. 26-CV-02159-BAS-MMP, 2026 WL 2568438, at *3 (S.D. Cal. Aug. 14, 2026) (ordering release after the government failed to comply with a habeas order);

*Tiboko-Tifuh v. Noem*, No. 26-CV-1215-JO-DEB, 2026 WL 1603795, at *4 (S.D. Cal. June 4, 2026) (ordering release after the government failed to provide a compliant bond hearing); *see also Munaf*, 553 U.S. at 693.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Motion to Enforce Judgment. Respondents are **ORDERED** to immediately release Petitioner under reasonable conditions of supervision at the discretion of Respondents.

**IT IS SO ORDERED**.

Dated: October 19, 2026

Honorable Linda Lopez
United States District Judge